Reese, J.
delivered the opinion of the court.
This is an action of covenant. The covenant, among other things, recited that Rogers purchased of Love & Brothers their furnace, in part consideration of which, he bound himself to furnish them with what merchantable pig iron they might be able to manufacture into bar iron or blooms at their forge or forges in Se-vier county, not exceeding five hundred tons of pig iron per an-num, to be delivered at the furnace aforesaid, as they might need it. And the Loves on their part, agreed to pay to said Rodgers one ton of merchantable, well assorted bar iron, for every four tons of pig iron they might get of the said Rodgers, payable quarterly at Pigeon Forge, or not more than that distance from Sevierville. That is; at the end of each quarter, they were to pay for what pig iron they may have got. The breach assigned in the declaration is, that defendant, Rodgers, did not furnish plaintiffs below, with what merchantable pig iron they were able to manufacture into bar iron or blooms at their forge in Sevier county, not exceeding five hundred tons per annum, delivered to the said plaintiffs at said furnace as they needed them, from the 1st day of April, 1837, to the 1st day of April, 1838, according to the tenor and effect, true intent and meaning of said agreement, although often requested, &c. And to this declaration, the defendant pleaded “covenant performed.”
Upon the trial, the court charged the jury, that the true construction of the covenant was, that the covenants were mutual and independant covenants. That the provisions of the act of 1807, *420 did not apply to the case; nor was a special request necessary, but the common request in the declaration was sufficient on the issue joined; that the defendant, by the terms of his covenant, was bound at all times from the 1st April, 1837, to 1st April, 1838, to have at his furnace the whole amount of the'pig iron, not exceeding five hundred tons. And if the plaintiffs had at any time applied for the five hundred tons of pig iron at once, it would have been evidence that they needed it, and if it was not delivered, that would have been a breach of that covenant. ‘ The court also charged the jury, that it was not necessary for the plaintiffs to malee out in evidence, that they had not received the pig metal, but that' proof that it had been demanded at Sevierville, and information had, that there was no metal, would excuse a demand being made at the furnace, and amounts to a demand.
Plaintiffs obtained a verdict, and the defendant moved in arrest of judgment, which the court refused.
The question raised by the motion in arrest of judgment is, whether, where from the nature of the agreement, a special demand is necessary, but not averred in the declaration, such omission will be aided by verdict and the formal scépius requisitus be held sufficient?
Of this we have no doubt, both upon reason and authority. It falls within the general rule applicable to such cases; it is the defective statement of a title, and not the statement of a defective title ; and the omission is cured by verdict, upon the ground, that a recovery would not have been suffered by the court, unless the omission had been supplied in proof, and the special request shown. There is no error, therefore, in' the refusal of the court to arrest the judgment. But we we are satisfied that the charge of the court to the jury is erroneous, .the court having misapprehended the meaning, and legal effect of the covenant. It seems obvious, that the contracting parties, manufacturers of iron, the one owning, a furnace of pig metal, and the other owning, forges of bar iron, to be carried on through the year, could not, and did not, intend that so much as five hundred tons should have been furnished at once; because in the nature of things the one could not at once supply, or the other, at once need so large an amount. The five hundred tons are the maximum of the aggregate amount to be distributively delivered at the furnace, in convenient quantities, throughout the *421 year, as the same might, according to circumstances, be needed from time to time, by the manufacturer of the bar iron.
As Rodgers was not bound to deliver five hundred tons of pig iron during the year to the Loves, but only so much, not exceeding that amount, as they might need during the year at their man-ufactories, his obligation from time to time to supply, was necessarily limited by their wants, from time to time, to consume; and, therefore, from the nature of the thing, it was incumbent upon the Loves, from time to time, to notify Rodgers of the extent of their wants, and to demand, as needed, a convenient supply.
Entertaining these views of the meaning of the contract, and of the reciprocal duties of the parties to each other, it becomes necessary to reverse the judgment, and grant a new trial.